IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Reginald Bernard Mooney,  #53850-019, | ) Civil Action No. 3:12-3255-JMC-JRM |
| Plaintiff, | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Federal Bureau of Prisons; | ) |
| Defendant. | ) |

Plaintiff filed this action, pro se, on November 19, 2012.[1] He is currently an inmate at the Federal Correctional Complex Medium in Petersburg, VA ("FCCM-Petersburg"). At the time of the alleged incidents, he was an inmate at the Federal Correctional Institution in Edgefield, South Carolina ("FCI-Edgefield"). Plaintiff appears to allege claims for negligence and malpractice under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Defendant, the Federal Bureau of Prisons ("BOP"), filed a motion for summary judgment on March 25, 2013. Plaintiff, because he is proceeding pro se, was advised on March 26, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendant's motion for summary judgment could result in the dismissal of his complaint. Plaintiff filed a response on April 18, 2013.

**STANDARD OF REVIEW**

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact,

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02 (B)(2)(d) DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Dep't of Social Servs.</u>, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). The moving party "bears the initial burden of pointing to the absence of a genuine issue of material fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). If the moving party carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." <u>Id.</u> at 718-19 (citing <u>Anderson</u>, 477 U.S. at 247-48).

## DISCUSSION

On or about April 7, 2007, Plaintiff was involved in a fist fight with another inmate at the Union City Regional Jail (in Georgia) where he was being held on a federal escape charge. X-rays were taken and Plaintiff was told they were negative. When he arrived at FCI-Edgefield on August 22, 2007, Plaintiff was still having problems with movement of his fingers and wrist. He continued to complain of pain for the three years he was housed at FCI-Edgefield. X-rays were taken on different occasions with the same results (negative). When he arrived at FCCM-Petersburg, Plaintiff

complained of pain and was referred to an orthopedic surgeon. New x-rays of Plaintiff's wrist were taken which Plaintiff alleges showed he suffered an injury. Complaint, ECF No. 1 at 3-4.

Plaintiff filed an administrative claim on December 27, 2011 under the FTCA. On July 26, 2012, Plaintiff's claim was denied (finding that there was no evidence Plaintiff sustained any loss caused by the wrongful act or omission of any BOP employee acting within the scope of his or her employment). See ECF No. 15-4.

Plaintiff alleges that his tort claim was wrongfully denied based on inaccurate information that he was able to do push-ups. He appears to allege claims for negligence or medical malpractice pursuant to the FTCA. Plaintiff also states that he seeks relief for "cruel and unusual punishment." See Complaint, ECF No. 1 at 3-4. Defendant contends that it is entitled to summary judgment because: (1) Plaintiff cannot establish a claim for negligence or medical malpractice; and (2) constitutional claims are not cognizable under the FTCA.

1.     FTCA Claims

Plaintiff appears to bring claims for negligence or medical malpractice pursuant to the FTCA.[2] Defendant contends that Plaintiff fails to show that it was negligent because he has not shown that Defendant failed to conform its conduct to the required standard or was negligent. Defendant argues that Plaintiff has not asserted a prima facie case of medical malpractice because he cannot establish this claim without the aid of expert testimony (which he has not provided) and

---

[2]The United States is the only proper defendant to an FTCA claim. See Holmes v. Eddy, 341 F.2d 477, 480 (4th Cir.1965) (holding that federal agencies cannot be sued under the FTCA); see also 28 U.S.C. § 1346(b) (providing that the district courts shall have jurisdiction for tort claims "against the United States"). However, even if Plaintiff were granted leave to amend his Complaint to name the proper defendant, such amendment would be futile for the reasons discussed below.

3

cannot establish proximate causation. Additionally, Defendant argues that, to the extent Plaintiff raises constitutional claims, civil rights claims are not within the purview of the FTCA.

Defendant provided a declaration from R. A. Blocker, M.D., the Clinical Director at FCI-Edgefield, concerning Plaintiff's medical care. Defendant's Motion for Summary Judgment, Ex. 5 (Blocker Decl.); ECF No. 15-5. Medical records of Plaintiff's treatment at FCI-Edgefield and FCCM-Petersburg were also provided. Defendant's Motion for Summary Judgment, Ex. 6 (Medical Records); ECF No. 15-6. These records indicate that during Plaintiff's intake screening at FCI-Edgefield on August 22, 2007, Plaintiff reported he had no chronic pain and rated his pain level as zero (on a scale of zero to ten). ECF No. 15-5, ¶ 5A; ECF No.15-6 at 1-2. During a Pulmonary Chronic Care Clinic appointment on August 29, 2007, Plaintiff voiced no complaints and rated his pain as a one (on a scale of one to ten, with ten being the worst pain). ECF No. 15-5, ¶ 5B; ECF No. 15-6 at 4.

On October 23, 2007, Plaintiff reported to sick call with a complaint of right wrist pain and an appointment was scheduled.  At his November 1, 2007 appointment, Plaintiff reported suffering from chronic right wrist pain since he was involved in a fight in April 2007. He indicated he had a tingling sensation in his fingers and he rated his pain as four out of ten.  An x-ray of his right wrist was ordered and Naproxen Sodium was prescribed.  On November 20, 2007, an x-ray indicated no evidence of recent fracture or other significant bony abnormality with an overall impression of negative.  ECF No. 15-5, ¶¶ 5C-D; ECF No. 15-6 at 5-8.

On December 4, 2007, Plaintiff complained of right wrist pain, a lack of strength/power in his right fourth and fifth fingers, and a pain level of four out of ten. It was noted that Plaintiff's x-ray report on file indicated a negative study. A consultation was submitted to the Clinical Director for

4

an evaluation with a provisional diagnosis of nerve compression. Plaintiff was advised to continue Naproxen and an ace wrap was applied. ECF No. 15-5, ¶¶ 5E; ECF No. 15-6 at 10-11. Plaintiff did not mention hand or wrist pain during his Pulmonary Chronic Care Clinic appointment on February 19, 2009, or during a medical encounter for a cut on March 13, 2009. ECF No. 15-5, ¶¶ 5G-H; ECF No. 15-6 at 17-22.

After Plaintiff complained on September 1, 2009 of chronic pain, another x-ray was taken on October 1, 2009. The x-rays showed no evidence of recent fracture or other significant bony abnormality in Plaintiff's hand, and the overall impression was that it was a negative study. ECF No. 15-5, ¶ 5I; ECF No. 15-6 at 23-26.

On November 10, 2010, a health intake assessment/history was completed by Plaintiff at USP Atlanta. As to a question asking whether he currently suffered from any painful condition, Plaintiff checked "no." ECF No. 15-5, ¶ 6A; ECF No. 15-6 at 35-36. During a December 7, 2010 health screen at FCCM-Petersburg, Plaintiff indicated he suffered from chronic right hand pain of his fourth metacarpal from an old injury. ECF No. 15-5, ¶ 6B; ECF No. 15-6, pp. 37-42.

On February 7, 2011, Plaintiff reported to sick call at FCCM-Petersburg. He complained of an aching pain in his right hand, indicated he was unable to close his fifth finger when making a fist, and rated his pain as two out of ten. Medical personnel noted that Plaintiff could not completely flex his fifth finger. ECF No. 15-5, ¶6C; ECF No. 15-6 at 43-44. On February 17, 2010, findings on a new x-ray were noted to be "Abnormal[?] fx [fracture] base 5 mc [metacarpal] v. assessory ossicle[3] -

---

[3]An ossicle is a small bone. See Dorland's Illustrated Medical Dictionary 1343 (32nd ed. 2012).

5

correlate clinically." Plaintiff was referred to an orthopedic surgeon. ECF No. 15-5 ¶6-D; ECF No. 15-6 at 45-48.

On April 5, 2011, Plaintiff complained that he could not take the pain in his right hand any longer, but rated his pain as only two out of ten. It was noted that Plaintiff spent money in the commissary, but not on any pain medications. He was advised that he was on the list to see the orthopedic surgeon and should purchase over-the-counter medication. ECF No. 15-5, ¶ 6E; ECF No. 15-6 at 49-50.

In an inmate request to staff on April 30, 2011, Plaintiff requested his medical records and indicated he had not seen the bone specialist about his right hand, but made no mention of continued pain in his hand. ECF No. 15-5, ¶ 6F; ECF No. 15-6, 51. On June 1, 2011, Plaintiff did not report suffering from any pain or discomfort at his Pulmonary/Respiratory Chronic Care Clinic appointment. ECF No. 15-5, ¶ 6H; ECF No. 15-6 at 52-55.

On July 8, 2011, Plaintiff complained of suffering from shoulder pain for about one month after injuring it playing basketball. He claimed he had been doing 1,000 push-ups a day before the injury, but currently could no longer do push-ups and could not lift his shoulder over his head. He rated his shoulder pain as three out of ten, and made no complaints of wrist pain. ECF NO. 15-5, ¶ 6I; ECF No. 15-6 at 56-57.

On July 15, 2011, Plaintiff was evaluated for complaints of shoulder pain. He denied any recent injuries and it was noted he had not been purchasing pain medications since the injury. He made no complaints of wrist pain. Plaintiff was advised to do range-of-motion exercises and take over-the-counter Motrin as needed. ECF No. 15-5, ¶ 6J; ECF No. 15-6 at 58-59.

In a July 21, 2011 request to staff, Plaintiff complained of right shoulder pain, alleged denial of medical treatment, claimed he could not take the pain any longer, and alleged cruel and unusual punishment. Staff responded that Plaintiff was seen in medical on July 8 and 15 and failed to show up for his scheduled x-ray on July 11, 2011. ECF No. 15-5, ¶ 6K; ECF No. 15-6 at 60.

On July 22, 2011, a contract orthopedist examined Plaintiff's right hand and right shoulder. The orthopedist noted that Plaintiff had a small ossicle at the base of his fifth metacarpal and metacarpal arthritis. He requested an MRI of Plaintiff's right shoulder, but did not make any recommendations regarding Plaintiff's hand injury. On July 27, 2011, Plaintiff was added to the Orthopedic Chronic Care Clinic for monitoring of his shoulder. ECF No. 15-5, ¶ 6L; ECF No. 15-6 at 61-63.

After that time, Plaintiff continued to be treated for right shoulder problems, including care from an orthopedic surgeon and receipt of medications. Plaintiff received a local steroid injection in his right shoulder on November 21, 2011, an MRI was completed on December 22, 2011, and he underwent arthroscopic shoulder surgery to repair a rotator cuff tear on March 23, 2012. There is no indication that Plaintiff complained of any right hand pain at his orthopedic or other medical appointments from July 27, 2011 to February 8, 2013. Plaintiff requested to return to work in the barbershop and was cleared in May 2012 to return to work with some restrictions. See ECF No. 15-5, ¶ 6M-CC; ECF No. 15-6 at 64-107.

The FTCA provides a limited waiver of sovereign immunity whereby the United States government submits itself to be sued in limited situations for negligent acts by its employees, in which private individuals under similar circumstances would be liable under state law. 28 U.S.C. § 1346(b) and §§ 2671 et seq. Under the FTCA, the court must determine liability in accordance with

7

the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also United States v. Neustadt, 366 U.S. 696, 706 n. 15 (1961). Accordingly, because Plaintiff alleges negligence or malpractice that occurred while he was housed at FCI-Edgefield (a BOP facility located in South Carolina), the substantive law of South Carolina controls.

In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." Bloom v. Ravoira, 529 S.E.2d 710, 712 (S.C.2000). The BOP owes Plaintiff an affirmative legal duty of care in accordance with 18 U.S.C. § 4042, which provides, in pertinent part, that the Bureau of Prisons has a duty to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). This duty has been interpreted as one of reasonable care or ordinary diligence. See Buchanan v. United States, 915 F.2d 969, 971 (5th Cir.1990)(The statute [18 U.S.C. § 4042] requires the exercise of ordinary diligence to keep prisoners safe and free from harm."); Owens v. Haas, 601 F.2d 1242, 1249 (2d Cir.1979) (stating that "the federal government owes a duty of reasonable care"); Harley v. United States, No. 08–820, 2009 WL 187588 at * 4 (D.S.C. Jan. 26, 2009)(duty interpreted as requiring BOP employees to exercise "ordinary diligence to keep prisoners safe and free from harm."); Johnson v. U.S. Government, 258 F.Supp. 372, 376 (E.D.Va.1966)(Under Section 4042, a prison official's duty requires only the exercise of ordinary diligence under the circumstance).

The South Carolina Supreme Court has required that a plaintiff alleging medical malpractice must provide evidence showing (1) the generally recognized and accepted practices and procedures

that would be followed by average, competent practitioners in the defendant's field of medicine under the same or similar circumstances, and (2) that the defendant departed from the recognized and generally accepted standards. Also, the plaintiff must show that the defendant's departure from such generally recognized practices and procedures was the proximate cause of the plaintiff's alleged injuries and damages. David v. McLeod Reg'l Med. Ctr., 626 S.E.2d 1, 4 (S.C.2006)(internal citations omitted). Additionally, "[t]he plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants." Id. In a medical malpractice case, the burden of proof of negligence, proximate cause, and injury is entirely on the plaintiff. Dumont v. United States, 80 F.Supp.2d 576, 581 (D.S.C. 2000).

Plaintiff fails to show negligence or malpractice on the part of Defendant as to his medical needs. Plaintiff did not file an expert affidavit or testimony with the Court. In the absence of such testimony, Plaintiff failed to set forth the applicable standard of care for the medical care at issue or establish Defendant's failure to conform to that standard. Further, Plaintiff failed to demonstrate that the alleged injury was causally connected to the alleged negligent treatment by BOP personnel at FCI-Edgefield. Plaintiff's claim cannot succeed unless he establishes proximate cause. Viewing the evidence in the light most favorable to the Plaintiff, he fails to show that prison officials did not provide him with reasonable care or exercise ordinary diligence under the circumstance.

The medical records, as set out above, indicate that Plaintiff's wrist was examined on a number of occasions and he received two x-rays of his wrist while he was at FCI-Edgefield which were negative. Contrary to Plaintiff's argument, the February 2010 x-ray (taken at FCCM-

Petersburg) does not affirmatively indicate an injury and the orthopedic surgeon diagnosed the problem as a small ossicle. There is no indication that any wrist problems were proximately caused by the care or lack of care received at FCI-Edgefield. Further, it should be noted that at the time of Plaintiff's shoulder injury (approximately June 2011), he was able to play basketball and reportedly do a 1,000 push-ups a day.

To the extent that Plaintiff is attempting to bring constitutional claims under the FTCA, such claims should be dismissed. Federal constitutional tort claims are not cognizable under the FTCA. FDIC v. Meyer, 510 U.S. 471, 478 (1994)("By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right.... [T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.").

2.     Bivens Claims

Plaintiff seeks relief for cruel and unusual punishment. Complaint, ECF No. 1 at 4. In his memorandum in opposition to summary judgment, he appears to discuss an Eighth Amendment claim. ECF No. 20 at 3-4.

To the extent that Plaintiff has raised an Eighth Amendment claim, it appears to be brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971).[4] However, the United States cannot be sued without its consent, and consent is a prerequisite to a suit against the United States. United States v. Mitchell, 463 U.S. 206, 212 (1983). A Bivens action may not be brought against agencies or departments of the United States. FDIC v.

---

[4] In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982).

Meyer, 510 U.S. 471, 486 (1994)(declining to extend Bivens remedy to federal agencies). Hence, the BOP is entitled to summary dismissal as to any Bivens claims asserted against it.

Additionally, to the extent that Plaintiff is asserting a claim for negligence or malpractice, such claims are not actionable under 42 U.S.C. § 1983 or Bivens. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003)(under the Eighth Amendment, deliberate indifference entails something more than mere negligence); Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990)(noting that mere negligence or malpractice does not violate the Eighth Amendment); Estelle v. Gamble, 429 U.S. 97, 106 (1976)("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

## CONCLUSION

Based on review of the record, it is recommended that Defendant's motion for summary judgment (Doc. 15) be **granted**.

                Joseph R. McCrorey
                United States Magistrate Judge

July 31, 2013
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).